# EXHIBIT B

CAUSE NO. 19-0111 _____

| | | |
|---|---|---|
| **PORT ROYAL CONDO OWNERS ASSOCIATION** | § § § § | IN THE DISTRICT COURT |
| **Plaintiff** | § § | |
| v. | § § | |
| **WESTON INSURANCE COMPANY, and RACHEL FEAR** | § § § § § | ____JUDICIAL DISTRICT |
| **Defendants** | § | ARANSAS COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, PORT ROYAL CONDO OWNERS ASSOCITION, files this original petition against Defendants, WESTON INSURANCE COMPANY, and RACHEL FEAR, in which Plaintiff seeks monetary relief over $1,000,000. In support of this petition, Plaintiff would show this honorable court as follows:

### I. Parties, Venue, and Discovery Level

Plaintiff, Port Royal Condo Owners Association (hereafter "Port Royal"), is the named insured for the subject property located at 100 Port Royal, City by the Sea, Aransas County, Texas.

Defendant, Weston Insurance Company (hereafter "Weston"), is a foreign fire and casualty insurance company doing business in Texas and can be served by serving its registered agent for service Nrai Corporate Services at 1021 Main Street, Suite 1150a, Houston, Texas 77002-6508.

Defendant, Rachel Fear (hereinafter referred to as "Fear"), is an individual and insurance adjuster, who resides in Florida and can be served at her place of business at 255 Primera Blvd., suite 300, Lake Mary, Florida 327462170.

The venue of this case is proper in Aransas County, Texas pursuant to Section 15.002

Copy from re:SearchTX

Electronically Filed
4/9/2019 1:59 PM
District Clerk, Pam Heard
Aransas County, Texas
By: Zach Westlake

of the Texas Civil Practices & Remedies Code.

Plaintiff intends to conduct discovery for this case under a level three discovery control plan as allowed by Rule 190.4 of the Texas Rules of Civil Procedure.

## II. Agency & Respondeat Superior

Whenever in this petition it is alleged that Defendants did any act or thing, it is meant that the Defendants or their agents, officers, servants, employees, or representatives did such act or thing. It is also done with the full authorization or ratification of Defendants or done in the normal routine, course, and scope of the agency or employment of Defendants or their agents, officers, servants, employees, or representatives.

## III. Conditions Precedent

All conditions precedent to recovery have occurred or been performed.

## IV. Facts of the Case

Port Royal Condo Owners Association (hereafter "Port Royal") purchased a commercial property insurance policy from Weston (Policy Number CTE170004500) to cover property losses from May 20, 2017 to May 20, 2018 policy period for Port Royal Condominiums. On or about August 26, 2017, during the subject policy period, Hurricane Harvey (CAT 1743) caused severe damage to the Port Royal Condominiums. The Port Royal Condo Owners Association thereafter reported this loss to Weston and their agents, who assigned this loss the claim number WEST17080418.

On or about September 1, 2017, Weston engaged the services of Rachel Fear of North American Risk Services (hereafter "NARS") to assist in the adjustment of Port Royal's Hurricane Harvey insurance claim. Ms. Fear thereafter engaged the services of Mid-America Catastrophe Services (hereafter "MACS") and its estimator, Harvey Widlund, to inspect the hurricane damage at the Port Royal Condominiums. Port Royal

Copy from re:SearchTX

believes that Weston and Fear hires adjusters and consultants like Widlund and MACS because they are biased for insurers, not objective, and will provide insurers with low-balled and result-oriented reports and estimates on which Weston and its adjusters can deny or underpay an insured's hurricane damage claim. True to form, in a November , 2017 estimate, MACS listed the Replacement Cost Value amount at $134,578.76, less Depreciation of $15,568.43, for and Actual Cost Value amount of $119,010.33. Despite the significant Hurricane Harvey damage, which resulted from reported wind speeds of 140 to150 mph and rain of 30-40 inches, MACS's estimate did not provide for proper amounts for dry-out, humidity treatment of water saturated areas within the condos, and other necessary water mitigation efforts for Hurricane Harvey storm damage. MACS's estimate also overlooked the damage due to the high winds of Hurricane Harvey that cracked the exterior stucco and caused flashing damage and wall movement, all of which allowed water penetration into the condominiums.

Believing that Weston and its adjusters and consultants had low-balled its storm damage insurance claim, Port Royal retained a licensed Texas Public Adjuster, Rick Carter of Blackstone Claim Services, LLC, (hereafter "Blackstone"), to inspect the property and properly evaluate the Hurricane Harvey damage to its property. Blackstone and Mr. Carter thereafter attempted to work with Weston and Ms. Fear to obtain a proper adjustment of the storm damage to the Port Royal condominiums, but Weston and its adjusters failed to cooperate.

As a result, Mr. Carter and Blackstone hired an engineer, Peter De La Mora of PE Service of Houston Texas, to investigate and report on the Hurricane Harvey damage to the Port Royal Condominiums. After investigating, Mr. De La Mora

3

Copy from re:SearchTX

concluded that the hurricane force winds caused severe damage to multiple condo windows and doors, which allowed rain to penetrate the interiors and cause significant water damage to the interiors of multiple units. The condominiums also sustained extensive exterior and structural damage due to the high winds of Hurricane Harvey. Mr. De La Mora recommended that the needed repairs to the condominiums meet the specifications of the latest International Residential Building Code, 2015 IRC. In addition, the condominium repairs also needed to meet the requirements of the Texas wind Insurance program so the units could pass a WTI-8 inspection by a certified Texas wind Insurance inspector. Based on Mr. De La Mora's report and recommendations, in a May 31, 2018 estimate, Mr. Carter and Blackstone determined that the cost to properly repair the storm damage to the Port Royal Condominiums at $1,485,216.23, which include all the necessary code upgrades. Mr. Carter sent Mr. De La Mora's report and the estimate to Weston and Ms. Fear for their review.

It wasn't until a June 11, 2018 that Ms. Fear acknowledged that she and Weston had received this information. In this letter, she informed Blackstone that she was forwarding the report and estimate to a building consultant, Grecco Construction Consultants, LLC (hereafter "Grecco"), and an undisclosed engineer to review them. Ms. Fear thereafter requested a re-inspection of the property with the building consultant Greco and its retained engineer.

Despite Mr. Carter's repeated requests for the re-inspection to be expedited, it wasn't until a month later, July 11, 2018, that Grecco and Michael E. Stenstrom, PE, of Stenstrom Schneider, Inc. (hereafter "Stenstrom") inspected the property with Mr. Carter. On July 18, 2018 after the inspection, Mr. Carter forwarded to Ms. Fear another

4

Copy from re:SearchTX

estimate from Jim Filipowicz of Jim Filipowicz & Associates, a general contractor and frequent consultant for insurers, in the amount of $1,342,705.12 for the proper repair of the Hurricane Harvey damage to the Port Royal Condominiums. Even though Mr. Carter forwarded these estimates to Ms. Fear and made repeated requests for a response and update concerning the insurer's findings made on its requested re-inspection, Weston and Ms. Fear did not respond to Mr. Carter.

It wasn't until August 31, 2018 that Ms. Fear provided Grecco's updated estimate and Strenstrom's report. In its August 2, 2018 report, Stretstrom concluded that Hurricane Harvey caused the damage to the exterior of portions of the condominium buildings; that the undamaged stucco does not need to be removed and replaced to meet current building code requirements; that the hurricane damage to the exterior of the buildings consisted mostly of sections of the roof structure being removed; that the main structure of both buildings was not damaged by the hurricane force winds and did not suffer any racking that twisted the buildings or caused any deflections to stucco finishes; and that minor cracks and dents to the stucco were observed in a few locations. Strenstrom made these conclusions despite noting that Port Royal had suffered wind gusts from 120 to 130 mph and that if 50% or more of the building's value is damaged, then the entire building needs to be brought up to current codes.

After Strestrom's report, Grecco performed another inspection of Port Royal on august 24, 2018. As a result of this inspection, Grecco estimated the Replacement Cost Value of the hurricane damage repairs to the Port Royal Condominiums at only $419,807.73, less depreciation of $47,050.63 for an Actual Cost Value of $372,757.10. Grecco did not allot for any water mitigation in its estimate and further only allocated

5

Copy from re:SearchTX

$27,273 of code upgrades to be paid when incurred even though Grecco knew or should have known the entire building needs to be brought up to current codes. Based on these reports, Port Royal also believes that Grecco and Strestrom are biased for insurers and prepare result-oriented reports and estimates to assist insurers and their adjusters to low-ball or deny storm damage insurance claims.

Thereafter, Brian Sims a senior claims adjuster of NARS took over for Ms. Fear. He told Port Royal and its consultants that he had been assigned to try and resolve the disparity between the conflicting reports and estimates, but made no serious attempt to do so. To date, Weston and its adjusters have failed and refused to pay Port Royal for the proper repair of the Hurricane Harvey damage to the Port Royal Condominiums.

### VI. Cause of Action for Breach of Contract

According to the insurance policy that Plaintiffs purchased, Defendants have the duty to investigate and pay Plaintiffs policy benefits for claims made for damages to the Port Royal Condos caused by hurricane Harvey. The subject storm caused substantial damage to the Port Royal Condos, which damage is covered under Plaintiffs' insurance policy with Weston. Weston has breached its contractual obligations and the subject insurance policy by failing to pay Plaintiff sufficient policy benefits for the cost to properly repair the hurricane damage to the Port Royal Condos. Weston has also breached the contractual provisions on timely investigating, adjusting, and paying Plaintiff's hurricane storm damage insurance claim. As a result of these breaches of contract, Plaintiff has suffered the damages that are described in this petition.

### VII. Causes of Action for Violation of Chapter 542 of the Insurance Code

Weston's and its adjusters' conduct that is described in this petition violate Chapter 542 of the Texas Insurance Code. Within 15 days after the receipt of either actual or written notice of Plaintiff's hurricane storm damage insurance claim, Weston did not request from Plaintiff any

6

Copy from re:SearchTX

items, statements, and forms that it reasonably believed at that time would be required from Plaintiff for its claim. As a result, Weston has also violated Chapter 542 by failing to accept or reject Plaintiff's claim in writing within 36 days after receiving either actual or written notice of its claim. Weston has also violated Section 542.058 by failing to pay Plaintiffs' claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period. In this respect, Weston owe the 18% per annum interest as damages on the amounts Weston paid late as well as any additional amounts it owes Plaintiff. In the event it is determined that Weston owe Plaintiff any additional monies, then Weston has automatically violated Chapter 542 of the Texas Insurance Code.

## VIII. DTPA Causes of Action

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendants, Weston and Fear under the provisions of the DTPA. Plaintiff has met all conditions precedent to bringing these causes of action against Defendants Weston and Fear. Specifically, these Defendants' violations of the DTPA include, without limitation, the following matters:

A. By their acts, omissions, failures, and conduct that are described in this petition, Defendants Weston and Fear have violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Defendants' violations include, without limitation, (1) their unreasonable delays in the investigation, adjustment and resolution of Plaintiff's storm damage insurance claim, (2) their failure to properly investigate Plaintiff's claim, (3) their hiring of biased adjusters and consultants to obtain result-oriented reports and estimates to assist the insurer in low-balling Plaintiff's claim, and (4) their failure to pay for the proper repair of Plaintiff's property on which Defendants' liability had become reasonably clear;

B. As described herein, Defendants Weston and Fear represented to Plaintiff that the subject insurance policy and Defendants' adjusting and investigative services had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

C. As described in this petition, Defendants Weston and Fear represented to Plaintiff that the subject insurance policy and Defendants' adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46(b)(7) of the DTPA;

D. As described in this petition, Defendants Weston and Fear represented to Plaintiff that the subject insurance policy and Defendants' adjusting and investigative services conferred or involved rights, remedies, or obligations that they did not have,

Copy from re:SearchTX

      which gives Plaintiff the right to recover under Section 17.46 (b)(12) if the DTPA;

E. By representing that Defendants would pay to repair the damages caused by the hail and windstorm and then not doing so, Defendants have violated Sections 17.46(b)(5), (7), and (12) of the DTPA;

F. Defendants have breached an express warranty that the damage caused by windstorm and hail damage would be covered under the subject insurance policy. This breach entitles Plaintiffs to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

G. Defendants' actions, as described in this petition, are unconscionable in that it took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendants' unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

H. Defendants' conduct, acts, omissions, and failures, as described here, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

All of the above-described acts, omissions, failures, and conduct of Defendants Weston and Fear are a producing cause of Plaintiff's damages that are described in this petition.

### IX. Causes of Action for Unfair Insurance Practices

Plaintiffs incorporate all the allegations in this petition for these causes of action against Defendants Weston and Fear under the Texas Insurance Code. Plaintiff has satisfied all conditions precedent to bringing these causes of action. By their acts, omissions, failures, and conduct, Defendants Weston and Fear have engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus these Defendants' failures to properly investigate Plaintiff's storm damage insurance claim. They also include Defendants' unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim and their failure to pay for the proper repair of Plaintiff's property on which their liability had become reasonably clear. They further include Defendants' hiring of biased adjusters and consultants to obtain result-oriented reports and estimates to assist them in low-balling Plaintiff's insurance claim. In addition, Defendants failed to look for coverage and give Plaintiff the benefit of the doubt. Specifically, Defendants are guilty of the following unfair

8

Copy from re:SearchTX

insurance practices:

    A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

    B. Engaging in unfair claims settlement practices;

    C. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

    D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendants' liability has become reasonably clear;

    E. Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time;

    F. Refusing to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim; and

    G. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

Weston and Fear have also breached the Texas Insurance Code when they breached their duty of good faith and fair dealing owed to Plaintiff. The conduct of Defendants Weston and Fear as described herein has resulted in Plaintiff's damages that are described in this petition.

## X. Cause of Action for Breach of Duty of Good Faith and Fair Dealing

Plaintiffs incorporate all the allegations of the preceding paragraphs for this cause of action. By their acts, omissions, failures, and conduct, Weston has breached their common law duty of good faith and fair dealing by unreasonably delaying payment of Plaintiff" entire claim and by failing to settle Plaintiff's entire claim because Weston knew or should have known that it was reasonably clear that the claim was covered. This conduct of Weston is the proximate cause of Plaintiff's damages.

## XI. Waiver and Estoppel

Defendants Weston and Fear have waived and are estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiff.

9

Copy from re:SearchTX

## XII. Damages

The above described conduct of Defendants Weston and Fear have caused Plaintiffs' damages, which include, without limitation, the unpaid cost to properly repair its property in the amount of $1,485,216.23 and other consequential damages due to the delays in the processing and payment of Plaintiffs' storm damage insurance claim. Plaintiff is also entitled to recover the amount of their claim plus an eighteen percent per annum interest on that amount under Section 542.060 of the Texas Insurance Code. All the damages described in this petition are within the jurisdictional limits of the Court.

## XIII. Additional Damages

Defendants Weston and Fear have also "knowingly" and "intentionally" committed deceptive trade and unfair insurance practices as those terms are defined in the applicable statutes. As a result, Plaintiff is entitled to additional damages under Section 17.50(b)(1) of the DTPA and by Chapter 541 of the Texas Insurance Code.

## XIV. Exemplary Damages

Weston's breach of the duty of good faith and fair dealing owed to Plaintiff was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Weston are the type of conduct that the state of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Weston for their wrongful conduct and to set an example to deter these Defendants and others similarly situated from committing similar acts in the future.

## XV. Attorney's Fees

As a result of Defendants' conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and has agreed to pay reasonable attorney's fees. Plaintiff is entitled to recover these attorney's fees under Chapter 38

Copy from re:SearchTX

of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

## X. Request for Disclosure

Plaintiff hereby requests that Defendants disclose within fifty days of service of this petition the information and material described in Rule 194.2(a) - (l) of the Texas Rules of Civil Procedure.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a trial by jury and requests that Defendants be cited to appear and answer herein, and that on final hearing, the court award Plaintiff a judgment against Defendants for the following:

1. Plaintiff's actual, additional and exemplary damages in an amount within the jurisdictional limits of this court as described in this petition;

2. Reasonable attorneys' fees through trial and appeal;

3. Eighteen percent per annum interest on unpaid policy benefits as damages pursuant to Chapter 542 of Texas Insurance Code.

4. Pre-judgment and post-judgment interest as provided by law;

5. Costs of court; and

6. Such other relief, in law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*Loree & Lipscomb*
777 E. Sonterra Blvd., Ste. 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile: (210) 404-1310

By: /s/ Robert W. Loree
Robert W. Loree
State Bar No. 12579200
rob@lhllawfirm.com
Stephen Fields
State Bar No. 24096598
stephen@lhllawfirm.com

Attorneys for Plaintiff

Copy from re:SearchTX